## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KOFI JAMISON, individually and on behalf of the class defined below, | ) ) ) | |
| Plaintiff, | ) | Case No. 12-cv-4415 |
| v. | ) ) | Judge Virginia M. Kendall |
| FIRST CREDIT SERVICES, INC. d.b.a. ACCOUNTS RECEIVABLE TECHNOLOGIES, et al., | ) ) ) | Magistrate Geraldine Soat Brown |
| Defendants. | ) ) | |

### RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY

Defendant FIRST CREDIT SERVICES, INC. ("FCS") submits the following Response in opposition to Plaintiff's Motion for Class Certification:

## I.    INTRODUCTION

Plaintiff asserts that FCS called his cell phone in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, which prohibits making calls to a number assigned to a cell phone using an "automatic telephone dialing system or an artificial or prerecorded voice" without the consent of the called party.  47 U.S.C. §227(b)(1)(A)(iii).

"[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable," *General Tel. Co. v. Falcon,* 457 U.S. 147, 160-61 (1982).  Notwithstanding this well recognized principle, Plaintiff's *pro forma* Memorandum In Support Of Motion For Class Certification (dkt. 52) ("Memo") glosses over the factors necessary  to establish a properly certified class.  FCS contacted customers of American Honda Finance Corp. ("Honda") to try to collect debts owed to Honda.  A large portion of the calls were placed to numbers that were provided to Honda *by the subject customers*.

Plaintiff's Motion should be denied because whether putative class members consented is an individualized issue of fact which predominates over any questions common to the class members.  If putative class members consented to FCS's calls by giving their numbers to Honda or FCS, those calls would not violate the TCPA.  However, in order to determine whether consent exists, the parties will be required to review every collection note, audio recording, and correspondence *and* depose each potential class member.

The class definition is also flawed.  It requires that putative class members were called on a cell phone as a result of skip traces.  Identifying the people called during a skip trace raises additional individual inquiries and will not result in ascertaining most of the putative class. Unlike the "White Pages," which identifies the names of *residential* phone subscribers who may have been called, there is no similar database to identify the cellular subscribers called.  There are also various technical issues discussed below that make it impossible to identify these putative class members.  Using plaintiff's definition, it is highly unlikely that a person similar to plaintiff would ever be identified.  During a skip trace, plaintiff was called on his cell phone in error and did not report his contact information to FCS when he informed FCS it was calling the wrong number.  His identity was only ascertained because he was contacted by Plaintiff's counsel after his telephone number was disclosed in an earlier TCPA case.  There are countless unidentifiable putative class members under this definition.

## II.    ARGUMENT

Class actions are "the exception to the usual rule" that cases are conducted on behalf of individual named parties. *Falcon,* 457 U.S. at 155 (internal quotation omitted).  Plaintiff bears the burden of showing that the requirements of Rule 23 are satisfied. *Amchem Products, Inc. v.*

130513930v2  0936232

*Windsor*, 521 U.S. 591, 614 (1997). This Court is obliged to undertake a *rigorous analysis* to determine whether the required elements have been met. *Falcon*, 457 U.S. at 160-61.

For the sake of judicial economy, FCS adopts Honda's arguments in opposition to Plaintiff's Motion to Certify and sets forth the following additional arguments

## A. Certification is Premature in Light of Pending FCC Proceedings

Plaintiff has alleged that FCS violated the TCPA by calling him "automatic telephone dialing system" without his consent. 47 U.S.C. §227(b)(1)(A)(iii). The TCPA defines the term "automatic telephone dialing system" as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B). The FCS has disputed that it called Plaintiff with "automatic telephone dialing system" and has moved to stay this case while the Federal Communication Commission determines whether a "predictive dialer" (the type of device used by FCS) is prohibited by the TCPA. *See* Motion to Stay, Dkt. nos. 42, 46 & 53. If the FCC holds that a "predictive dialer" is not an "automatic telephone dialing system", then Plaintiff will have no case under this aspect of the TCPA. Given the pending FCC proceeding, the best course of action would entail staying this case until such time as the FCC rules.

## B. Plaintiff's Authorities Are Not On Point

The vast majority of the cases Plaintiff cites are "junk fax" cases where the defendants purchased third-party telemarketing lists from third-parties and sent unsolicited fax advertisements to class members, despite the fact that the defendant had no prior business relationship with the class members. Dkt. 52, p. 9. In contrast, FCS was attempting to call persons who owed money to Honda, and as discussed below, at least 40% of the numbers FCS called as a result of skip traces were actually provided to Honda by the subject debtors.

130513930v2 0936232

Plaintiff cites to only three TCPA cases from the Northern District of Illinois which involved calls to cell phones: *Pesce v. First Credit Services,* 11 C 1379, *Balbarin v. North Star Capital* and *Mitchem v. Illinois Collection Services.* All three are distinguishable or even demonstrate why the proposed class in this case cannot be certified. In *Pesce*, Judge Gettleman decertified the class, holding that an individualized issue of fact existed with regard to whether the plaintiff and other members of the putative class had consented to being called by providing their cell phone numbers to the creditors. *Pesce,* 11 C 1379, Dkt. 126 (June 6, 2012 decertification order,) (Exhibit A). According to Judge Gettleman:

> The class certified was too broad because it included as class members persons who received a non-emergency telephone call from defendant to a cellular telephone through the use of an automatic telephone dialing system or artificial or prerecorded voice when the original creditors' records show that the person provided the cell phone number to the creditor but defendant's records do not. Accordingly, the court decertifies the class certified on December 19, 2011 in Docket No. 71. In light of the file-by-file analysis which must be conducted as to the existence of consent, class certification should be denied.

Exhibit A, pp. 1-2.

The class definition in this action is significantly different than the one in *Mitchem.* The *Mitchem* case involved the collection of medical debts. The medical providers obtained the cell phone numbers of the patients and later forwarded those numbers to the defendant debt collector. The collector called the numbers and was sued. The theory of the case was that there was no consent under the TCPA because the medical providers were not authorized to provide the numbers to the collector due to HIPAA prohibitions. The court agreed to certify the class of people that gave their numbers to the medical provider who then provided the number to the collector; there was no dispute that the numbers were given to the medical provider and those people were readily indentified. After certifying the class, Judge Guzman granted summary judgment in favor of the debt collector. 2012 WL 170968, *2 (N.D. Ill. Jan. 20, 2012)

- 4 -

("plaintiff's TCPA claim, and thus that of the class he represents, fails, with or without the HIPAA graft he urges."). Nothing like that is alleged here. The legal theory is completely different, there is no agreement that all the class members gave the creditor their cell phone number, and there is no agreement on the identity of the class.

The class certified in *Balbarin* was restricted to those people for whom defendant's records did not show consent. The certification order in *Balbarin*, 10-cv-01846, was premised on the assumption that consent under the TCPA depended exclusively on the records in the debt collector's possession. *Balbarin's* reading of the TCPA is contrary to the Federal Communication Commission's interpretation of the Act. *In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, ¶ 9, 2008 WL 65485, at **3 (Jan. 4, 2008) ("the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.") ("2008 Order").[1] As in *Mitchem,* the class definition in this case is significantly different than in *Balbarin.* The records in possession of Honda are directly relevant to the consent issue and make this case unlike *Balbarin.*

For these reasons, *Pesce*, *Mitchem* and *Balbarin* do not support class certification. If anything, *Pesce* supports denying certification because Judge Gettleman properly recognized that consent was an individualized issue. Exhibit A, pp. 1-2.

### C. Individualized Questions of Fact Preclude Certification and Demonstrate that a Class Action is Not a Superior Method of Litigating this Case

Federal Rule 23(b)(3) requires that common issues of fact or law predominate over questions affecting only individual class members. Common issues predominate only if "there

---

[1] The FCC's Orders is binding on this Court pursuant to the Hobbs Act, which reserves to the courts of appeals exclusive jurisdiction to determine the validity of all final FCC orders. 28 U.S.C. § 2342(1); 47 U.S.C. § 402; *City of Peoria v. Gen. Elec. Cablevision Corp.*, 690 F.2d 116, 119-20, 122 (7th Cir. 1982)

exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Foreman v. PRA III, LLC,* 2007 WL 704478 (N.D. Ill. 2007); *Gene and Gene, LLC v. Biopay LLC,* 541 F.3d 318, 328 (5th Cir. 2008). The predominance inquiry looks to "how a trial on the merits would be conducted if a class were certified." *Gene and Gene,* 541 F.3d at 328. The predominance criterion is far more demanding than the identification of a single common issue, and the "movant cannot gerrymander predominance by suggesting that only a single issue be certified for class treatment when other individualized issues will dominate or be meaningfully material to the resolution of the absent class members' claims." *Hamilton v. O'Connor Chevrolet, Inc.,* 2006 WL 1697171, at *6 (N.D. Ill. 2006).

"If the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification." *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 369 (N.D.Ill.2008). *See also, CE Design Ltd. v. King Architectural. Metals, Inc*., 637 F. 3d 723, 726 (7th Cir. 2011) ("an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class [and] bring into question the adequacy of the named plaintiff's representation."). As discussed below, the question of consent is an individualized issue that would swamp any common issues that might exist.

### 1. Legal Analysis of Consent Under the TCPA

As the FCC has stated, "persons who knowingly release their telephone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 2008 Order, 23 FCC Rcd. 559, ¶ 9, 2008 WL 65485, at **3 (quoting *1992 TCPA Order, 7 FCC Rcd at 8769, para. 31.* The FCC's 2008 and 1992 Orders

- 6 -

are consistent with the TCPA's legislative history showing that prior express consent is present when an individual provides a phone number:

> The restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications. The Committee does not intend for this restriction to be a barrier to the normal, expected or desired communications between businesses and their customers.

H.R. Rep. No. 102-317, at 17 (1991).

Courts have universally held that the provision of debtor's cell phone number is evidence that the debtor consented to receive auto-dialed calls from a debt collector. *Mitchem*, 2012 WL 170968, *1 ("a consumer's provision of his cell telephone number to a creditor ... reasonably evidences [his] prior express consent to [being] contacted at that number about the debt absent instructions to the contrary" (internal quotations and citation omitted)); *Greene v. DirecTV, Inc.*, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010) (consent found when debtor gave his cellular telephone number to a credit bureau); *Cunningham v. Credit Mgmt. L.P.,* 2010 WL 3791104 (N.D. Tex. 2010).

## 2. Courts hold that Consent Involves an Individualized Inquiry, Precluding Certification

Numerous courts have denied certification on by finding that the existence of consent is an individualized issue. In *Hicks v. Client Services, Inc.,* 2008 WL 5479111 (S.D. Fla. 2008), the court refused to certify a TCPA class consisting of debtors who received calls from a debt collector on their cell phones because evidence concerning whether each class member consented to receive the calls (by releasing his or her phone number to the creditor) would be different for every class member. 2008 WL 5479111, *7-*8. In denying certification, the court held that deciding the class's claim would necessitate "mini-trials on consent of every class member." *Id.* Similarly, the court in *Versteeg v. Bennett, Deloney & Noyes, P.C.,* 2011 WL

159805 (D. Wy. Jan. 13, 2011), refused to certify a TCPA class against a debt collector for the same reason. 2011 WL 159805, at *3.

Further, as noted above, Judge Gettleman decertified a TCPA class, holding, "[t]he class certified was too broad because it included as class members persons who received a non-emergency telephone call from defendant . . . when the original creditors' records show that the person provided the cell phone number to the creditor but defendant's records do not. * * * In light of the file-by-file analysis which must be conducted as to the existence of consent, class certification should be denied." *Pesce*, 11-cv-01379, Dkt. 126 (Exhibit A, p. 2). Judge Gettleman denied Plaintiff leave to substitute in as a class member in the *Pesce* litigation. *Id.* (denying *Pesce* dkt. no. 106, Exhibit B).

Most recently, the court in *Balthazor v. Central Credit Servs. Inc.*, 2012 WL 6725872 (S.D. Fla. Dec. 27, 2012) denied certification of a TCPA cell phone case, holding,

> The Court finds the reasoning of *Hicks* and *Gene & Gene, LLC* persuasive. Resolution of each putative class member's TCPA claim would necessarily involve an individual assessment of whether each class member consented to receive telephone calls on their cellular telephone. The Court rejects Plaintiff's argument that consent is not an obstacle to class certification.

*Id.* at *4.

C.     **Plaintiff's Class Definition is Flawed and a Class Action is Not a Superior Method of Litigating this Case Because the Class Cannot Be Identified**

Plaintiff is required to demonstrate that an identifiable class exists. *Simer v. Rios*, 661 F.2d 655, 669-70 (7th Cir.1981) (where the court reversed the certification of a class upon finding that it would be too difficult to identify individual class members). *See, e.g., Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 238 (S.D. Ill. 2011) (denying certification of TCPA claims on ascertainability grounds where court could not easily determine "whether each telephone number had actually been reassigned to a new customer," and "[e]ven

- 8 -

for any reassigned numbers, . . . it would be necessary to identify the people assigned to those numbers at the times the allegedly offending calls were made, which may not be the people currently assigned to those numbers").

Here, the putative class includes:

> (1) All persons in the United States (2) to whose cellular telephone number (3) FCS or American Honda placed a non-emergency telephone call (4) using an automatic telephone dialing system or an artificial or prerecorded voice (5) within 4 years of the complaint (6) with respect to a debt allegedly owed to America Honda (7) where FCS or American Honda obtained the cellular telephone that was called via skip trace methods.

Dkt. 52, p. 1.

### 1. The Class Definition is Flawed.

Plaintiff seems to believe that if the class is narrowed to those called via a skip trace it is easy to identify the class and those people have a meritorious claim. Plaintiff is wrong. The definition incorrectly assumes a person called via a skip has a claim and that such people can be located. As explained in Honda's brief (incorporated by reference here), more than 40% of the putative class members at least arguably consented to receive FCS's calls by releasing their numbers to Honda. *See* Honda's Response, dk. 75, p. 19. This alone shows the flaw in the class definition.

This is similar to the flaws in *Pesce* and the effort to amend the class in *Pesce* to add new class representatives. The proposed Second Amended Complaint in *Pesce* contained a second proposed class representative – Diana Smith - who was a person called by FCS after FCS performed a skip trace. (Exhibit B) Notably, Ms. Smith was not added as a class representative in the present suit. Why? The evidence demonstrated that, contrary to her pleading, she had provided her cell phone number to her creditor. *Pesce* dkt. no. 123, p. 4, Exhibit C). Ms. Smith

130513930v2 0936232

is an example of how consent may exist in Honda's records even though putative class members were skip traced by FCS.

In addition to the evidence of consent which exists in Honda's records, an unknown number of additional putative class members consented to receiving calls from FCS by providing their numbers to FCS. Identification of these individuals will require a fact intensive, account-by-account examination of the of contracts, internal collection data, letters from debtors and recordings of phone calls with debtors. (Exhibit D, excerpt of 30(b)(6) dep. of FCS, pp. 49-56).[2]

In light of the file-by-file review that must be undertaken to determine whether consent exists, this Court should deny Plaintiff's Motion to Certify.

### 2. The Class Cannot Be Identified

The class is fatally flawed because it will be impossible to identify the putative class members. The TCPA provides that it is unlawful to place a call a "to any telephone number assigned to a . . . cellular telephone service . . . for which the *called party* is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The term "called party" is not defined by the TCPA. The Seventh Circuit has held that "called party" means the person subscribing to the called number *at the time the call is made*. *Soppet v Enhanced Recovery*, 679 F.3d 637 (7th Cir. 2012). In *Soppet*, the defendant debt collector called a cellular telephone number that the debtor had provided to the creditor. *Id*. at 639. At the time of the calls, however, the debtor no longer subscribed to the cellular telephone number called by the debt collector. *Id*. The court stated that the term "'called party' must mean Cell Number's current subscriber, because only the

---

[2] Plaintiff is wrong when he argues that consent can be given only at the time the account is opened (Memo at p. 4, citing *Meyer v PRA*, 2012 U.S. App. LEXIS 21136, 11-56600 (9th Cir. Oct. 12, 2012)). On December 28, 2012, the Ninth Circuit revised its prior opinion and stated that "[p]ursuant to the FCC ruling, prior express consent is consent to call particular telephone number in connection with a particular debt that is given before the call in question is placed." 2012 WL 6720599, *1 (9th Cir. Dec 28, 2012).

current subscriber pays."  *Id*.  The court ultimately conclude that "[c]onsent to call a given number must come from its current subscriber."  *Id*. at 641.

Applying *Soppet*, in order to properly identify a class, Plaintiff is required to identify the current subscribers at the time the subject telephone calls were placed.  As discussed below, it is impossible to identify the subscribers of the phones at the times the calls were placed.

### a.    The Identification of a "Wrong Numbers" Results in the Creation of Anonymous Class Members

The class is fatally flawed because it will be impossible to identify persons similar to Plaintiff – persons who were called as a result of a skip trace but are not the underlying debtors.  Plaintiff's inclusion in this suit throws a monkey wrench into the identification of the putative class members because he is not the debtor.  Rather, "[Plaintiff's] sister, Kai Jamison (Kai), incurred a debt with American Honda" and "FCS was calling Jamison on behalf of American Honda in an attempt to collect Kai's debt."  Complaint, ¶¶ 14-15.  The underlying collection records demonstrate that Plaintiff informed FCS that it was calling the wrong number and that he could not provide alternative contact information for Kai Jamison.  Exhibit B ("D BRTHR CLLD OFFICE FROM HOME NMBR TO ADVISE WE HAVE WRNG NMBR..DSNT SPEAK TO SISTER AND CLDNT PROVIDE ALT CONTACT INFO.").  Essentially, Plaintiff reported to FCS that it was calling a "wrong number."  The collection records do not identify Plaintiff by name or address.  To the extent other persons were mistakenly called for another person's debt, FCS would have no way of knowing who those individuals are.

Plaintiff would have likely not filed this lawsuit but for the fact that FCS was required to disclose the names of putative skip traced class members in the *Pesce* litigation in response to a motion to compel.  (Exhibit F, excerpts of Jamison's testimony).  The disclosure of Mr.

Jamison's telephone number allowed his attorney to contact him.[3]  Defendant is not providing this history in an effort to relitigate Judge Gettleman's ruling.  Rather, these facts serve to demonstrate that certification should be denied because the identification cannot be resolved through any recognized methods.

> **b.** **There is No Recognized Means to Identify The Putative Class Members**

In addition to identifying the current subscriber at the time the subject calls were placed, Plaintiff must demonstrate whether a number called by FCS was assigned to a cell phone (and not a landline) *at the time FCS called the number*.  These undertakings are complicated by the fact that subscribers can port numbers from landlines to cell phones and vice versa.  *See* Federal Communications Commission, Wireless Local Number Portability (Wireless LNP) Frequently Asked Questions, available at http://www.fcc.gov/encyclopedia/wireless-local-number-portability-wlnp (accessed February 4, 2013.

Assuming for the sake of argument that it is possible for Plaintiff to determine if the call was placed to a cell phone at the time the calls was placed, it is <u>not</u> possible to identify the current subscribers who were actually called by FCS at the times the calls were placed.  Due to a limited supply of cell phone numbers, many wireless service providers "recycle" a cell number from one customer to the next. As a result, the purchaser of a new cell phone number may

---

[3]  Mr. Jamison's lawyer has claimed that he contacted Mr. Jamison when he was "contacting class members" *after* the *Pesce* class action was certified.  *Pesce vs. First Credit Services,* 11 C 1379, Dkt. 119, p. 3.  Mr. Pesce's counsel justified contacting Mr. Jamison by arguing that "the protective order does not apply to any contact with the persons listed in the skip trace lists as those lists were not subject to the protective order because the documents were not designated as confidential." *Id*. at p. 3.  Mr. Pesce's lawyer also argued that that he did not improperly solicit Mr. Jamison by arguing that "there could be no solicitations as a matter of law as to claims the class members already had as plaintiff's counsel already represented the proposed plaintiffs." *Id*. a p. 7, fn. 6.  Notably, in an earlier court appearance, Mr. Pesce's lawyer had argued that he thought that the court had given him permission to search for a substitute plaintiff in light of the consent issues surrounding Mr. Pesce. Judge Gettleman denied a motion for rule to show cause for violation of a protective order, holding that  "Plaintiff did not violate the protective order because the document in question was not marked confidential as required to be protected by the order." *Pesce,* 11 C 1379, Dkt. 126, p. 2 (<u>Exhibit A</u>).

130513930v2 0936232

receive a call intended for the prior cell phone subscriber or user. *Soppet*, 679 F.3d 638-39 ("Bill Collector puts a machine on the job and repeatedly calls Cell Number, at which Customer had agreed to receive phone calls by giving his number to Creditor. . . . But Customer no longer subscribes to Cell Number, which has been reassigned to Bystander."); *Meadows v. Franklin Collection Service Inc.,* 414 Fed.Appx. 230, 2011 WL 479997 (11th Cir. Feb. 11, 2011) ("Meadows did not owe any of the debts that were the subject of the telephone calls at issue in this case. Those calls concerned the collection of debts owed by Meadows's daughter, Elizabeth Meadows Taylor ("Taylor"), and by the family that previously owned Meadows's telephone number, the Tidmores. * * * Meadows's telephone number at her residence was assigned to the Tidmores until May 2006, at which point Meadows acquired it."). If debt collection calls occurred four years ago (the TCPA has a four year statute of limitations), it is possible that the phone may have been recycled to different persons on *numerous* occasions.

### c. There is No Recognized Means to Identify Subscribers Because Numbers Are Shared and No Records May Reflect This Fact

Alternatively, even if Plaintiff could determine if the call was placed to a cell phone at the time the calls was placed, it is <u>not</u> possible to identify the persons who were actually called by FCS in light of the fact phone number may have been shared between two related persons as discussed in Honda's Response at pages 11-12 and 27. *See also*, *Osario v. State Farm Bank F.S.B.*, 2012 WL 1671780, *1 (S.D. Fla. May 10, 2012) ("The precise relationship between Osorio and Betancourt is unclear; however, it is undisputed that Osorio and Betancourt live together and have an adult son ("John").. Additionally, Osorio, Betancourt, and John all share a Metro PCS family plan, which includes both 8626 and 5645. The records provided by Metro PCS solely identify Osorio as the account holder, and, the records do not identify which numbers belongs to Osorio, Betancourt, or John." (citations omitted)). Where a phone bill is under one

130513930v2 0936232

persons name but a second person uses that number as a contact number, it might be impossible to identify the authorized user of the phone.

### d.    There is No Recognized Cell Phone Ownership Database

Plaintiff ignores the fact it is not possible to identify the historical subscribers to a cell phone because there is no publicly available list of cell phone numbers.  *See* Report of Ken Sponsler (Exhibit G). While "[s]ome mobile service providers participate in a Caller Name or CNAM database . . . [t]he CNAM database is voluntary and . . . it is not universally available even among mobile service providers that offer the service."  *Id*., p. 2.  For example, Verizon does not participate in the CNAM database.  Further, "CNAM is relevant only for *current* subscriber and the data is not completely reliable due to latency in updates and inaccurate information."  *Id*. (emphasis supplied).

"Pre-paid telephone services introduce another difficulty in determining current as well as historical subscriber information."  *Id*.  This is because "[b]uyers of pre-paid telephone services have not been required to provide name or any other identifying information to purchase the services."  *Id*.  Moreover, databases do not "necessarily definitively identify authorized users who may have provided the number during the normal course of business."  *Id*.  Further, as noted above, "[i]t is common practice for family and friends to share plans where a single subscriber's name is associated with multiple numbers on the account for phones being used by family and others. Many businesses also provide mobile devices to their employees which could be used for personal as well as business purposes."  *Id*..

Sponsler also cites to "Mobile Virtual Networks" as adding "[a]nother layer of difficulty in determining historical user identities of mobile telephones is the increasingly common practice of 'wholesaling' . . . [where] Virgin Mobile, for example, actually provides all of its mobile

subscriber services through Sprint." *Id*. at p. 3. According to Sponsler, "Virgin Mobile subscribers are actually on the Sprint network, which further complicates the ability to reliably associate subscribers through providers." *Id*. Finally, Sponsler opines that skip-trace searches cannot accurately identify cell phone subscribers because even costly skip traces "do not produce reliably effective or consistent results." *Id*.

Sponsler's report demonstrates that it is not possible to identify the proposed class.

## III. CONCLUSION

Plaintiff's Memorandum glosses over the individualized issues regarding consent and the identification of putative class members. In particular, Plaintiff's Memorandum fails to identify how he intends to identify the putative class members, improperly suggesting that it as an administrative matter that can be addressed *after* certification is granted in his favor. It is Plaintiff's burden to demonstrate that he can identify the putative class. Because the proposed class cannot be accurately ascertained, certification should be denied.

WHEREFORE, for the above reasons, Defendant FIRST CREDIT SERVICES, INC., respectfully requests that This Honorable Court Deny Plaintiff's Motion for Class Certification.

Respectfully submitted,

By: */s/ James C. Vlahakis*

Counsel for FIRST CREDIT SERVICES, INC.

David M. Schultz
James C. Vlahakis
HINSHAW & CULBERTSON
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601-1081
(312) 704-3715
jvlahakis@hinshawlaw.com

130513930v2 0936232

## CERTIFICATE OF SERVICE

       I hereby certify that on February 4, 2013, I electronically filed the above document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to all counsel of record.

/s/ James C. Vlahakis
James C. Vlahakis
Hinshaw & Culbertson LLP
Attorney for Defendant
222 North LaSalle, Suite 300
Chicago, IL 60601
tel 312-704-3715

130513930v2 0936232