# EXHIBIT G

## EXPERT REPORT OF KEN SPONSLER

I am the Vice President and General Manager of CompliancePoint, DM INC (CompliancePoint) with offices in Duluth, GA.  CompliancePoint is a wholly owned subsidiary of PossibleNOW, INC. I was contacted for the purposes of discussions regarding engagement as an expert witness by James C. Vlahakis of Hinshaw & Culbertson LLP, counsel for the Defendant First Credit Services, Inc. in the case KOFI JAMISON, on behalf of himself and all others similarly situated, Plaintiff, v. FIRST CREDIT SERVICES, INC. dba ACCOUNTS RECEIVABLE TECHNOLOGIES, and AMERICAN HONDA FINANCE CORPORATION, Defendants, Case No. 1:12-cv-04415, Hon. Virginia M. Kendall, IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

I have been engaged to provide opinions regarding the availability of technology and data sources to reliably identify the subscriber names associated with cellular telephone numbers at the time the numbers were dialed. For this case, I am charging a rate of $400 per hour.

**Materials reviewed and relied upon:** Plaintiff's Memorandum In Support Of Motion For Class Certification and its various Exhibits - Complaint; Defendant First Credit Services, Inc.'s Supplemental Answers to Plaintiff's Interrogatories, Order, Declaration of Keith J. Keogh, , Plaintiff's Responses to Defendant's First Discovery Requests (FCS), Plaintiff's Responses to Defendant's First Discovery Requests (AHFC), AT&T Response, AT&T Response Part 2, Jamison AT&T Phone Bill; Global Connect call records; spread sheets of historical cell phones and subscriber identification.

A copy of my CV is attached hereto as Exhibit A.  In addition to the experience identified on my CV, in the last four years, I have provided deposition testimony in the following cases: *Stephen M. Manno, on behalf of himself and all others similarly situated, Plaintiff, vs. Healthcare Revenue Recovery Group, LLC d/b/a Account Resolution Services, and Inphynet South Broward, INC, defendants*, United States District Court Southern District of Florida Case No. 11-61357-Civ-Scola/Rosenbaum (S.D. Fla.), *United States of America and the States of California, Illinois, North Carolina and Ohio, v. Dish Network, LLC.* Case No.: 3:09-cv-03073 (SEM) (BGC) Central District of Illinois, *Navarro v. Sears Life Insurance Company*, Case No. 2:08-CV-00527-GEB-EFB, in the United States District Court for the Eastern District of California; and *Trilegiant Corporation v. Sitel Corporation*, Case No. 1:2009-cv-06492 in the Southern District of New York.

In addition to the publications identified in my CV, in the last ten years I published the article entitled "Data Privacy and Security Laws: Is Your Company at Risk?" in the November 2005 LOMA Resource Magazine. I also publish a monthly compliance article for customer distribution.

## Methodology

In drafting this report and rendering my opinions in this case, I considered the case related materials I reviewed, my knowledge of available wireless data sources as well as my experience

in compliance and telephone data audit matters. I stay current with industry developments—both in terms of technology and compliance—and this has also informed my opinions.

## **OPINIONS**

1. There is no available data source to mechanically identify the subscribers and users associated with mobile telephone numbers.. Additionally, there are several factors that greatly diminish the likelihood of reliably identifying mobile telephone subscribers from a historical perspective. I describe some of these factors here:

   a. **Name Directories:** There is no publicly available list of mobile phone numbers (such as the Yellow Pages or the 411 directory assistance databases for landlines). Some mobile service providers participate in a Caller Name or CNAM database. This facilitates the transmission of caller ID information similar to landline telephone services. The CNAM database is voluntary and subscribers must pay additional fees for this feature (usually bundled with other premium features). Therefore, it is not universally available even among mobile service providers that offer the service. Another factor is carrier participation in the database—among the major carriers, AT&T, Sprint, and T-Mobile are accounted for in this database, but Verizon is not. Finally, CNAM is relevant only for current subscribers, and the data is not completely reliable due to latency in updates and inaccurate information. I am unaware of any source for CNAM data from a historical perspective.

   b. **Pre-paid telephones:** Pre-paid telephone services introduce another difficulty in determining current as well as historical subscriber information. Buyers of pre-paid telephone services have not been required to provide name or any other identifying information to purchase the services. Several states have enacted laws to require buyers of these telephones to provide their names but even that is problematic because there is a lack of verification procedures to ensure true names are given. In 2010, Senator Charles Schumer introduced S.3427 (Pre-Paid Mobile Device Identification Act) which would require purchasers of pre-paid telephones to provide identifying information. However, this bill still resides in the Committee on Commerce, Science, and Transportation.

   c. **Subscriber-vs-User:** Even if there were reliable sources to determine the identity of subscribers from a historical perspective, this information does not definitively identify authorized users who may have provided the number during the normal course of business. Most mobile telephone service providers use the term "subscribers" in ways that are synonymous with persons who are billed for services. It is common practice for family and friends to share plans where a single subscriber's name is associated with multiple numbers on the account for phones being used by family and others. Many businesses also provide mobile devices to their employees which could be used for personal as well as business purposes. The business is the "subscriber" and is billed for the services while the employees are authorized users.

    **d.  Mobile Virtual Networks (MVO):** Another layer of difficulty in determining historical user identities of mobile telephones is the increasingly common practice of "wholesaling." Virgin Mobile, for example, actually provides all of its mobile subscriber services through Sprint.  Sprint wholesales bandwidth to Virgin Mobile. Therefore Virgin Mobile subscribers are actually on the Sprint network, which further complicates the ability to reliably associate subscribers through providers.

    **e.  Skip Tracing:** Skip Tracing methods are sometimes employed by creditors or long lost relatives in an attempt to locate persons or specific information about persons such as an updated address or telephone number. Skip Tracers generally rely upon two basic techniques to find this information. The first is the Internet, where publicly available information includes social media sites and search engines, and the second is fee based data mining vendors.  In the debt collection realm, Skip Tracers are often limited by budgetary constraints which are often defined by the size of the debt owed by the debtor. This is an important point because Skip Tracers may be required to pay hundreds of dollars for "better quality" data represented by data mining resources. However, Skip Tracing resources, even those that cost several hundred dollars, do not produce reliably effective or consistent results.

**2.**  In my opinion, there is no mechanical means to reliably identify subscribers and authorized users of mobile telephones from a historical perspective. This is also not possible even for current subscribers and authorized users. Skip Tracing methods can be prohibitively expensive and produce unreliable results.

Ken Sponsler