**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KOFI JAMISON, individually and on behalf of the class defined below, ) ) | | |
| Plaintiff, ) | Case No. 12-cv-4415 | |
| v. ) ) | Judge Virginia M. Kendall | |
| FIRST CREDIT SERVICES, INC. d.b.a. ) ACCOUNTS RECEIVABLE ) TECHNOLOGIES, and ) AMERICAN HONDA FINANCE ) CORPORATION ) Defendants. ) | Magistrate Geraldine Soat Brown | |

## MOTION FOR RECONSIDERATION

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests this honorable Court to reconsider its order denying Plaintiff's motion for class certification. Doc. 104. In support hereof, Plaintiff states:

**I.     Introduction and Summary**

1.     This Court denied Plaintiff's motion for class certification based primarily on the following three holdings: 1) the class is not ascertainable; 2) issues of consent predominate and 3) plaintiff is not an adequate class plaintiff because his felony conviction may distract the jury. Doc. 104.

2.     In finding that the class was not ascertainable, the Court misapprehended the facts when it held that FCS's records would not identify the subscribers of the telephone numbers at the times the calls were placed. In fact, that information is already in FCS's records because when FCS obtained each of the telephone numbers at issue through Accurint, the number came with the name of the subscriber at that time. Further, plaintiff does not agree that FCS was trying to call plaintiff's sister, but instead has always maintained that FCS knew it was calling Kofi Jamison because the skip

trace records showed that the number called belonged to Kofi Jamison and FCS obtained separate numbers relating to plaintiff's sister.

3. While being mindful that motions to reconsider are disfavored, Plaintiff has filed the instant motion because plaintiff's motion for class certification is premised on the fact that FCS knew it was calling Kofi Jamison at the time it called him and that FCS' records show that they obtained Kofi Jamison's name as the user of the cell phone at the time they made the calls at issue. In other words, the skip trace that FCS performed did not associate plaintiff's cell phone number with his sister, but explicitly listed the cell phone number called as belonging to Kofi Jamison.

4. Further, plaintiff argued that the same is true for all of the class members as all cell phone numbers of the putative class members were obtained by the same skip tracing method that reveals the name, telephone number and address of the person called at the time of the call. Doc. 90 at p. 9. Plaintiff was not arguing that there was a need for a *future* skip trace, but instead FCS's records already contained the name associated with the cell number call. As such, not only was the class ascertainable, it had already been ascertained.

5. Similarly, because FCS' records showed the cell number as belonging to Kofi Jamison there is no dispute issue of material fact as to whether plaintiff is the subscriber of the cell phone called that would distract the jury. Indeed, the undisputed evidence shows that FCS records show that it obtained, Kofi Jamison's name, address and the cell phone number associated with Kofi's name. *Id*. The caller id on the phone names Kofi Jamison, his name is on the telephone bill[1] and when FCS spoke to Kofi Jamison at the number at issue, FCS maintains that it stopped calling

---

[1] The fact that the cell phone was previously part of a family plan has no bearing on who has standing to sue under the TCPA. *Soppet v. Enhanced Recovery Co, LLC*, 679 F.3d 637 (7th Cir. 2012).

plaintiff . There is no issue of material fact. Therefore, since plaintiff's credibility is not an issue as to whether he has standing, there is no risk that the jury will be distracted by his felony conviction.

6. Finally, in ruling that Honda's account notes may[2] provide evidence of consent, it appears that the Court analyzed the issue with an understanding that Honda would be allowed to re-open class discovery. Although plaintiff contends re-opening class discovery is inconsistent with this Court affirming Judge Brown's order barring untimely class discovery, the Court certainly has discretion to re-open discovery. Yet, plaintiff contends that if discovery was re-opened, a simple computer query could locate any cell number in the notes field in a matter of minutes and would not present any individual issues as shown below. *See Exhibit A.*

7. In addition, shortly before this Court ruled on class certification, another district court examined substantial the same issues as to consent and ascertainability and certified a TCPA cell phone class. *See Manno v. Healthcare Revenue Recovery Group, LLC, et al*, No. 11-cv-61357-RNS (S. D. Fla. March 26, 2013) attached hereto as *Exhibit B*.

## II. Standard on Motion for Reconsideration

8. A court may, *sua sponte* or upon motion, reconsider its interlocutory orders, which are subject to revision at any time before the entry of a final judgment. *Fed. R. Civ. P. 54(b)*; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983).

9. Thus, under Rule 54(b), a court may reconsider its order to correct manifest errors of fact or law or where to do so would be "consonant with justice." *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995).

---

[2] Honda has not put forth a single example of a putative class member providing their number in the account notes and discovery on this issue closed on November 9, 2012.

3

10. Plaintiff respectfully submits that the Court's order denying class certification is premised upon a manifest error of fact and law such that reconsideration is consonant with justice.

## III. THE CLASS IS ASCERTAINABLE

11. FCS used a skip tracing service called "Accurint" in order to obtain Kofi Jamison's contact information *and* the contact information of his sister and friends. *Doc 90. Exhibit 2* to plaintiff's reply to class certification[3] – *FCS's Responses to Requests for Admission* at ¶ 29; *Exhibit 3 – FCS's Answer to Second Set of Interrogatories* at ¶ 4. As a result, FCS obtained *Plaintiff's* name, address, and telephone numbers and **separate** telephone numbers for his sister at the time the calls were placed. *Exhibit 4 – Screen Shot of Accurint Results*.

12. FCS then called Plaintiff's cellular telephone, knowing it was calling Kofi Jamison, on numerous occasions in 2010 while undertaking to collect his sister's alleged debt. *Exhibit 5 – FCS's Call Records*. This is not a case where FCS obtained a telephone number associated with Kofi's sister and reached the wrong person. The Accurint records stated the cell number called was Kofi's cell number, FCS called the number and eventually spoke to Kofi at the cell number called.

13. Therefore, plaintiff has never agreed that FCS thought it was calling anybody but Kofi Jamison as that is the name FCS obtained as the user of the cell phone *prior* to FCS calling plaintiff.

14. Similarly, plaintiff did not argue that a future skip trace could reveal the user of the cell number. Instead, plaintiff argued that FCS already performed the skip trace and obtained the names, numbers and addresses associated with the cell number called. Indeed, the class is limited to persons whose cell number was skipped trace *prior* to calling those cell numbers. Plaintiff was not arguing that there was a need for a *future* skip trace, but instead FCS's records already contained

---

[3] All references to exhibits with numbers are from plaintiff's reply to class certification.

the name associated with the cell number call. As such, not only was the class ascertainable, it had already been ascertained.

15. Yet, even if FCS's did not *previously* skip trace the cellular telephone numbers and have the names and addresses associated with the cell number called at the time it called them, that information can be obtained through a commercially available public records search. Indeed, FCS cited to an FCC report that states a caller id directory will show who the user of the cellular telephone was. http://hraunfoss.fcc.gov/edocs_public/attachmatch/DA-11-1089A1.pdf (footnote 29). This citation supports plaintiff's position as it demonstrates that directories can be cross referenced to verify that the person called matches FCS' records. So not only is the class ascertainable, it has already been ascertained and can be double checked to insure FCS' records match the called id directory. For example, FCS' records show the cell number at issue in this case was Kofi Jamison's at the time called. Since Kofi Jamison is the only name appearing on the caller id for this number, the caller id directory would confirm that he was the user of the phone.

16. In addition, the class certification order in this case seems to be inconsistent with the this Court's finding that a TCPA class was identifiable even though the only information currently available were the class members telephone numbers because a class administrator could conduct a reverse-look-up to obtain the names and addresses to provide notice. *See Exhibit 10 – Rojas v. Career Education Corp. Final Approval Order.* The class definition in this case, is much more narrow than *Career Education Corp.* and the name and address associated with each cell number is in FCS' records.

17. Likewise, in a TCPA cell phone case that concerned various franchisee's and numerous ways a person could have provided their cellular telephone number, a district court held

5

that the class can be identified administratively. *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 566 (W.D. Wash. 2012) (Certified a cell phone TCPA case and rejected arguments that problems in identifying class members defeat certification.); *Manno v. Healthcare Revenue Recovery Group, LLC. supra*. Since the names, addresses, and telephone numbers of the class members were already known at the time the calls were made, identification is resolved and the Court should reconsider its holding finding the class was not ascertainable.

## IV. CREDIBILITY WILL NOT BE AN ISSUE FOR THE JURY

18. Plaintiff recognizes that there is authority that the Court can find plaintiff inadequate based on his felony conviction alone. Yet, the Court did not do so and plaintiff submits correctly examined whether the conviction would adversely impact the class.

19. Because FCS' records showed the cell number as belonging to Kofi Jamison there is no dispute issue of material fact as to whether plaintiff is the subscriber of the cell phone called that would distract the jury. In fact, FCS even admits that when Kofi complained to it about the calls to his phone, FCS stopped calling him. Indeed, the undisputed evidence shows that FCS skipped trace Kofi Jamison and the cell phone called was reported as his, the caller id directory names Kofi Jamison and his name is on the telephone bill[1].

20. Further, plaintiff is seeking statutory damages under the TCPA and is not seeking any actual damages for amounts he paid for the telephone bill. Therefore, there is no credibility issue relating to any portion of his case and there is no risk that the jury will be distracted by his felony conviction.

---

[1] The fact that the cell phone was part of a family plan has no bearing on who has standing to sue under the TCPA. *Soppett* and *Page*.

21. As this Court held in *Curry v Kraft Foods*, "credibility analysis is not an examination into the representatives moral righteousness' but instead relates to any improper or questionable conduct arising out of or touching up on the very prosecution of the lawsuit." *Curry v. Kraft Foods Global, Inc.*, 2011 U.S. Dist. LEXIS 102510, *13 (N.D. Ill. 2011)(Kendall, J.)

22. Plaintiff's conviction has no bearing on the conduct arising out of this lawsuit. He did not ask to be called by FCS nor did he take any action that would invite FCS to believe it was calling anybody but Kofi Jamison. As such, he is adequate. *See e.g., Meyer v. Portfolio Recovery Assocs., LLC,* 2012 U.S. App. LEXIS 26708, *9 (9th Cir. 2012)(affirming finding of adequacy in TCPA class action despite named plaintiff's *multiple* criminal convictions for offenses involving dishonesty and use of aliases)

23. Plaintiff submits that Mr. Jamison's actions in this case prove he is an adequate class plaintiff. He repeatedly rejected individual settlement offers in order to look out for the class. He sought separate legal counsel before agreeing to be a named plaintiff, has participated in the case by reviewing all of the pleadings, answered discovery, been deposed and attended the settlement conference with Judge Brown. In all aspects, his prosecution of this matter for the class has been outstanding and his conviction does not relates to any improper or questionable conduct arising out of or touching up on the very prosecution of the lawsuit.

24. Further, Plaintiff submits that the Court can address any misgivings with a short hearing to allow the Court to look plaintiff in the eye to determine if he is adequate. Alternately, the Court can view the video tapped deposition of Mr. Jamison and see not only was he honest, he volunteered information even when it was unfavorable to him. His credibility won't distract a jury even if this matter goes to a jury. Along this line, if plaintiff is inadequate, the class' claims will

7

never be vindicated. Plaintiff submits that the chance that a juror may look unfavorably upon Mr. Jamison even if there is a jury issue, is less prejudicial to the class then finding plaintiff inadequate and having the class claims expire. At least at trial, the class has a substantial likelihood of prevailing. As it stands now, they have no chance of recovering anything.

## V. ANY ISSUE OF CONSENT SHOULD NOT DEFEAT CERTIFICATION

25. Once again, plaintiff contends re-opening class discovery is inconsistent with this Court affirming of Judge Brown's order barring untimely class discovery. Yet, plaintiff submits if discovery was re-opened, a simple computer query[2] could locate any cell number in the notes field or other computer records in a matter of minutes and would not present any individual issues. *See* Affidavit of E-Discovery consultant attached hereto as *Exhibit C*. Plaintiff does not concede that appearance of the number in the account notes equals consent, but is willing to limit the class to avoid the issue.

**Honda Has Not Presented Any Evidence Showing It May Have Additional Consent**

26. As noted above, any discovery relating to consent was closed on November 9, 2012. In setting the discovery schedule, plaintiff specifically raised the issue that he should not have to deal with hypothetical issues of consent and if defendants were going to argue issues of consent that any such consent should be produced. This Court then denied defendants request to carve out consent discovery from the deadline.

> MR. VLAHAKIS: If I may, your Honor, one issue. I don't want to have to come back to readjust the schedule, but with regard to the November 9th date, from what I've seen in the prior case and other cases, if **we have an issue where that telephone number appears in**

---

[2] Honda was careful in its argument that it does not have a practical means of presently searching its account notes. Yet, it is simple to copy Honda's data and run a computer search for the telephone numbers. *Id*.

**the records of Honda,** we may be getting into an individual dispute as to whether that particular class member may have provided that number......We have the hurdle then determining who the subscriber was for the particular cell phone, which I'm going to be engaging KCC to do**. But we still then need to figure out an issue if that number was provided by that consumer to Honda, and we may have still skip traced that number, how to resolve that issue**. For example, in the **Pesce case** –

THE COURT: Class cert. is closed November 9th -- the discovery on class is closed November 9th. **If you have some issue that is not presented to the Court that you're conjuring up from your previous case, then you come before Judge Brown, and you raise it with her.** Back to this briefing on the class certification. So he's going to file on the 23rd, right? Is that what yours is?

*Exhibit B* at page 18 (Emphasis Added).

27. Although both defendants had the option to ask Judge Brown for more time, neither did so, let alone timely do so. Instead, Honda disclosed that it was able to administratively find the cell numbers for a certain percentage of class members. It then argued months after discovery closed that it *may* have evidence of consent in the account notes, but did not even provide a single example of such consent[3].

28. Because Honda has no evidence of any consent being provided in the account notes, it is in the same exact position as the defendants who did not provide any evidence of consent. i.e. *Meyer supra.* In addition, the FCC has ruled as follows: "We **emphasize** that prior express consent is deemed to be granted **only if** the wireless number was provided by the consumer to the creditor, **and** that such number was provided during the **transaction that resulted in the debt owed**." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23

---

[3] If FCS was barred from introducing evidence, Honda should have been barred from arguing that it *may* have evidence that it could introduce.

F.C.C.R. 559 at ¶10 (Dec. 28, 2007) ("2008 FCC Ruling")[4]. To illustrate the meaning of the phrase "the transaction that resulted in the debt owed," the FCC held that creditors could prove consent through records such as "purchase agreements, sales slips, and credit applications." *Id*. As such, any notes in the account fields, is irrelevant to issue of consent.

29. Further, it is defendants' burden to produce consent discovery in response to discovery requests and not plaintiff's burden to show lack of consent. *Donnelly v. NCO Fin. Sys, Inc.*, 263 F.R.D. 500 (N.D. Ill. 2009), defendant's Fed.R.Civ.P. 72 objections overruled, 2010 U.S. Dist. LEXIS 9866 (N.D. Ill. Jan. 13, 2010) (holding that the class benefit outweighs defendant's burden of production for call records and consent information); *Martin v. Bureau of Collection Recovery, LLC*, 2011 WL 2311869, at *5, (N.D.Ill. June 13, 2011) (same). After all, as Judge St. Eve put it, "[i]f defendant does not have documents or other information which substantiates the defense it is difficult to fathom why it interposed that defense in the first place." I*n re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Doc. 02-278, 23 FCC Rcd. 559 (January 4, 2008) (holding that the creditor is responsible for showing it had consent to make otherwise illegal calls).

**Consent Is An Affirmative Defense That Does Not Predominate**

30. This Court and numerous courts in this district have certified TCPA class actions[5] where the class definition, like the one proposed in this case, makes no reference at all to consent

---

[4] Under the Hobbs Act, the FCC's TCPA rulings are not subject to review by U.S. District Courts and are therefore final and controlling. *See CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F. 3d 443, 446 (7th Cir. 2010).

[5] The issue of consent for both faxes and calls to cell phone is the same. Namely, how did defendant obtain the number at issue.

or any lack thereof. *See e.g.*, *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 U.S. Dist. LEXIS 73869 at *20-21 (N.D. Ill. 2009)(Kendall, J.)(certifying class defined as "All persons who, on or about October 6-7, 2005, were sent faxes in the form attached as Exhibit 1 on behalf of defendant Finish Thompson promoting its goods or services for sale.") *Sadowski v. Med1 Online, LLC*, 2008 U.S. Dist. LEXIS 41766 at *4 (N.D. Ill. 2008)(Aspen, J.)(certifying class defined as "(a) all persons with Illinois fax numbers; (b) who, during October, 2006 (c) were sent faxes in the form attached as Exhibits A-B by or on behalf of defendant Med 1 Online promoting its goods or services for sale.");; *CE Design v. Beaty Construction, Inc.*, 2009 U.S. Dist. LEXIS 5842 at *2-3 (N.D. Ill. 2009)(Hibbler, J.)(certifying class defined as "All persons who, in August 2003, were sent a fax from Beaty Construction, Inc. , stating, "Hardwood Crane Mats Used 1 Time Description 16' X 4' X 8 with cutouts" for "$ 2300.00 each F.OB. Lafayette, Indiana" and listing 317-835-2254 as the telephone number to call for information."); *Garrett v. Ragle Dental Lab, Inc.*, 2010 U.S. Dist. LEXIS 108339 at *1 (N.D. Ill. 2010)(Bucklo, J.)(certifying class defined as "(a) all persons located within the states of Illinois and Indiana (b) who, during December 2009, (c) were sent faxes by or on behalf of defendants promoting their goods or services for sale (d) and who were not provided an 'opt out' notice that complies with federal law."); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.,* 2010 U.S. Dist. LEXIS 125842 at *8 (N.D. Ill. 2010)(Kennelly, J.)(certifying class defined as "all persons who were successfully sent a Topsail Sportswear advertisement during the company's fax transmissions to the fax numbers contained in its InfoUSA text files during the period from January 5, 2006 through September 24, 2007.")

31. First, consent is not an individual issue but an issue that is common to the class. *Green v. Service Master*, 2009 U.S. Dist. LEXIS 53297 at *6 (N.D.Ill. 2009) ("[T]he question of

consent may rightly be understood as a common question' and the possibility that some class members may have consented is not sufficient to defeat class certification."); *Saf-T-Gard International, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008) (holding that where "some number of faxes were sent on defendant's behalf (with or without defendant's explicit authorization), potentially to tens of thousands of recipients... reflects precisely the type of "organized program" that lends itself to a common adjudication of the consent issue"); *Hinman*, 545 F. Supp. 2d at 807 ("The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification" and "It seems to me, however, that by certifying a class of individuals who received unsolicited faxes, I am 'merely setting the boundaries of the class,' not resolving the substantive issues." (Citations Omitted); *Finish Thompson, Inc.*, 2009 U.S. Dist. LEXIS 73869 at *13-14.

32. Second, even if consent is an individual issue, it does not predominate over common questions. *See Green* , 2009 U.S. Dist. LEXIS 53297 at *6 (Noting that such an argument "...would wipe away the ability to bring a class action under the TCPA or any statute in which a defendant might raise the issue of the plaintiffs' consent."); *Paldo Sign,* 2010 U.S. Dist. LEXIS 125842; *Garrett, 2010* U.S. Dist. LEXIS 108339; *Targin Sign,* 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Cy's Crabhouse, 259* F.R.D. 135 (N.D. Ill. 2009); *Finish Thompson, Inc.*, 2009 U.S. Dist. LEXIS 73869 *5; *Hinman*, 545 F. Supp. 2d 802; *Sadowski*, 2008 U.S. Dist. LEXIS 41766 ; *G.M. Sign, Inc. v. Franklin Bank*, S.S.B, 2008 U.S. Dist. LEXIS 79827, 2008 WL 3889950, at *7 (N.D. Ill. 2008).

33. It is important to note that the court in *Pesce v. First Credit Services, Inc.*, 11 C 1379 (N.D. Ill., Dec. 19, 2011) explicitly rejected the argument that searching through records to look for evidence of consent defeated certification as did *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 566

(W.D. Wash. 2012) (Certified a cell phone TCPA case and rejected arguments that problems in identifying class members defeat certification.)

34. In addition, at least two of those courts concluded that class definitions, like the definition proposed by plaintiff, were indeed *even more appropriate* for certification than class definitions that did include lack of consent as an element. *Sadowski*, 2008 U.S. Dist. LEXIS 41766 at *6 ("there is no requirement in Rule 23 that Plaintiff's class must be defined in terms of the statute allegedly violated . . . to the contrary, as we held in our February 20, 2008 opinion, defining a class in terms of the elements of a statute would be the 'equivalent to deciding the merits of class members' claims,' and thus impermissible." *citing Foreman v. Pra III, LLC*, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. 2007)); *G.M. Sign*, 2009 U.S. Dist. LEXIS 73869 at *20-21 ("The class definition, however, need not contain any reference to consent . . . Furthermore, delving into issues of consent in ascertaining class membership, as would be required by inserting a requirement that class plaintiffs did not consent to receive Finish's faxed advertisement, would amount to impermissibly deciding the merits of the case at class certification.")

35. Plaintiff acknowledges that in *certain cases* "*some overlap* with the merits of the plaintiff's underlying claim . . . cannot be helped" in the Court's "rigorous analysis" of the certification issue. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2011 U.S. LEXIS 4567 at **21(emphasis added). For instance, in *Dukes*, the commonality requirement "necessarily" overlapped with the plaintiffs' merits contention that Wal-Mart engaged in a pattern or practice of discrimination because the crux of the inquiry in the plaintiffs' Title VII claims were "the reason for a particular employment decision." *Id* at **23-24. In such a case, a judge may make "a *preliminary*

*inquiry* into the merits." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (2001)(emphasis added).

36.  In this case, the Rule 23 certification requirements do not *necessarily* overlap with the merits of the Defendant's consent defense. *See CE Design Limited v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) ("express invitation or permission" is a defense and holding that the a class can be certified even as to the issue of consent alone); *Donnelly v. NCO Fin. Sys.*, 263 F.R.D. 500, 503-04 (N.D. Ill. 2009)(Nolan, J.); *Sadowski*, 2008 U.S. Dist. LEXIS 41766 at 11. Indeed, as shown above, the class definition need not and should not address consent at all.

37.  The addition of a "lack of consent" requirement to the class definition in this case would require, at the certification stage, not just a "preliminary inquiry" but an *actual determination* of the merits of every element of Plaintiff's TCPA claim and also of Defendant's affirmative defense that the recipients consented to receive the calls in question. *Sadowski*, 2008 U.S. Dist. LEXIS 41766 at 6; *Foreman*, 2007 U.S. Dist. LEXIS 15640; *G.M. Sign*, 2009 U.S. Dist. LEXIS 73869 at 20-21.

38.  Once again, plaintiff suggested that the Court could revise the class definition to include the issue of consent if the Court determined it was appropriate[6]. For example, in decertifying

---

[6] *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004)("holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition"); *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."); *Harris v. Gen. Dev. Corp.*, 127 F.R.D. 655, 659 (N.D. Ill. 1989).*Green v. Service Master*, No. 07-CV-4705, 2009 U.S. Dist. LEXIS 53297, 2009 WL 1810769 (N.D.Ill. June 22, 2009)

the class in *Pesce*, the court simply held the class certified was too broad because it omitted the original creditors' records that could show that the person provided the cell phone number to the creditor. *See Doc. 126* at ¶ 1 in No.11-cv-1379. Plaintiff can also seek leave to amend the complaint to modify the class definition if the Court determines that is the more appropriate route.

      WHEREFORE, Plaintiff respectfully requests that this Court reconsider its order and grant certification of the class proposed by Plaintiff or in the alternative to reconsider .

      Respectfully submitted,

      /s/ Keith J. Keogh
      One of Plaintiff's attorneys

Keith J. Keogh
Timothy Sostrin
Keogh Law, Ltd.
55 W. Monroe, Ste. 3390
Chicago, Illinois 60606
312.726.1092 (office)/312.726.1093 (fax)