IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KOFI JAMISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 12 C 4415 |
| | ) | |
| FIRST CREDIT SERVICES, INC. d.b.a. | ) | Judge Virginia M. Kendall |
| ACCOUNTS RECEIVBABLE | ) | |
| TECHNOLOGIES, and AMERICAN HONDA | ) | |
| FINANCE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kofi Jamison filed a putative class action complaint against Defendants First Credit Services, Inc. ("FCS") and American Honda Finance Corporation ("Honda") alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. The Court denied Jamison's Motion for Class Certification. Jamison has moved the Court to reconsider its decision. For the reasons set forth below the motion for reconsideration is denied.

## BACKGROUND

This case involves an alleged violation of the TCPA whereby FCS, on behalf of Honda, allegedly called Jamison's cellular telephone multiple times without Jamison's consent in an effort to collect a debt owed to Honda by Jamison's sister. FCS obtained the cellular telephone number by running a "skip-trace" on Jamison's sister.[1] The TCPA prohibits a creditor from making a call using an automated telephone dialing system or an artificial or prerecorded message to a wireless telephone number for purposes of collecting a debt unless the call is made

---

[1] A "skip-trace" is a process used to develop "new telephone, address, job or asset information on a customer, or verifying the accuracy of such information." *Meyer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036, 1040 n. 1 (9th Cir. 2012).

with the "prior express consent" of the called party. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, 23 F.C.C. Rcd 559, 564, ¶ 9 (2008).[2] The facts of this case are described in detail in the Court's March 28, 2013 Memorandum Opinion and Order and incorporated herein by reference.

As a result of the calls made by FCS on behalf of Honda, Jamison filed a complaint in this Court on June 6, 2012 on behalf of a putative class defined to include:

> (1) All persons in the United States (2) to whose cellular telephone number (3) FCS or American Honda placed a non-emergency telephone call (4) using an automatic telephone dialing system or an artificial or prerecorded voice (5) within 4 years of the complaint (6) with respect to a debt allegedly owed to American Honda (7) where FCS or American Honda obtained the cellular telephone that was called via skip trace methods.

(Docket No. 1, the Complaint, at ¶ 32.) After the parties completed briefing the motion, this Court denied the motion for class certification on March 28, 2013. *See* Memorandum Opinion and Order dated March 28, 2013 (the "Order") at Doc. 104. The Court denied the motion for three reasons. First, the Court found that Jamison's felony conviction for access device fraud rendered him inadequate to serve as the class representative under Federal Rule of Civil Procedure 23(a)(4). Second, Jamison failed to satisfy the "predominance" requirement of Rule 23(b)(3) because individualized issues of consent would predominate over common questions of law and fact. Third, the proposed class was overbroad and not ascertainable.[3] Jamison now contends that all three of the Court's reasons for denying class certification were wrong and should be reconsidered. The Court disagrees.

---

[2] A final order made by the Federal Communications Commission interpreting the TCPA is binding on this Court under the Administrative Orders Review Act, 28 U.S.C. § 2342(1). *See CE Design, Ltd. v. Prism Business Media, Inc.,* 606 F.3d 443, 446 (7th Cir. 2010).

[3] The Court found that Jamison satisfied the other requirements necessary for class certification.

## LEGAL STANDARD

Motions for reconsideration are extraordinary in nature and are viewed with disfavor. *See, e.g., Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990); *see also Marmi E. Graniti D'Italia Sicilmarmi S.p.A. v. Universal Granite and Marble,* 757 F. Supp. 2d 773, 781 (N.D. Ill. 2010). A motion for reconsideration is not an appropriate vehicle for relitigating arguments that the court previously rejected or for arguing issues that could have been raised during the consideration of the motion presently under reconsideration. *See Caisse Nationale de Credit Agricole v. CBI Industries, Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996); *Musch v. Domtar Industries, Inc.,* 587 F.3d 857, 861 (7th Cir. 2009); *Sigsworth v. City of Aurora,* 487 F.3d 506, 512 (7th Cir. 2007) (internal citation omitted). As a result, they are appropriate only: (1) where a court has misunderstood a party; (2) where the court has made a decision outside the adversarial issues presented; (3) where the court has made an error of apprehension; (4) where a significant change in the law has occurred; or (5) where significant new facts have been discovered. *See Broaddus v. Shields,* 665 F.3d 846, 860 (7th Cir. 2011) (citing *Bank of Waunakee,* 906 F.2d at 1191). Indeed "[a] motion to reconsider is frivolous if it contains no new evidence or arguments of law that explain why the [court] should change an original order that was proper when made." *Magnus Electronics, Inc. v. Masco Corp. of Indiana,* 871 F.2d 626, 630 (7th Cir. 1989).

## DISCUSSION

### I. Jamison Identifies No Valid Basis for this Court to Reconsider His Adequacy as Class Representative

In its original opinion, the Court found that Jamison failed to meet his burden in establishing himself to be an adequate representative for the class because he had been convicted

for fraud in 2008. *See* Order at 21-23. This was because a class plaintiff who has serious credibility problems may not be an adequate class representative. *See CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 726 (7th Cir. 2011). While it is necessary that admissible evidence exists that "so severely undermin[es] plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims" for a credibility attack to succeed, *Id.* at 728 (quoting *Dubin v. Miller,* 132 F.R.D. 269, 272 (D. Colo. 1990)), a recent fraud conviction has such an effect. *See, e.g., Schleicher v. Wendt,* No. 02 C 1332, 2009 WL 761157, at *3 (S.D. Ind. Mar. 20, 2009) (Hamilton, J.) (finding that "a fraud conviction undermines a proposed class representative's adequacy to represent the class."); *Kirkpatrick v. Ironwood Communications,* No. C05-1428JLR, 2006 WL 2381797, at *6 (W.D. Wash. Aug. 16, 2006) (finding convictions for fraud rendered representative inadequate); *Xianglin Shi v. Sina Corp.,* No. 05 C 2154, 2005 WL 1561438 (S.D.N.Y. July 1, 2005); *Hartsell v. Source Media,* No. 98 C 1980, 2003 WL 21245989, at *3 (N.D. Tex. Mar. 31, 2003); *In re Proxima Corp. Securities Litigation,* No. 93 C 1139, 1994 WL 374306 (S.D. Cal. May 3, 1994).

Jamison's motion for reconsideration concedes "that there is authority that the Court can find plaintiff inadequate based on his felony conviction alone." (Doc. 105 at ¶ 18.) However, Jamison then contends the Court did not find him inadequate based on his fraud conviction alone but, instead, misapprehended the facts and the TCPA in focusing on: (1) Jamison's monetary loss; and (2) the fact that Jamison does not pay the bill for the cellphone in question. These assertions are incorrect and provide no basis for reconsideration.

First, the Court specifically found that Jamison's recent fraud conviction for access device fraud rendered him inadequate because the conviction was admissible under Federal Rule

of Evidence 609, would be offered to impeach his credibility with the jury, and would detract from the claims of the class.  Specifically, the Court held:

> Jamison pled guilty to a felony charge to access device fraud in 2008.  This is obviously a conviction for fraud, which is sufficient by itself to render Jamison an inadequate representative under the case law.  This conviction is admissible and may be offered to impeach his credibility with a factfinder.  As a result, there is a strong likelihood that the jury will focus on Jamison's credibility and not the claims of a potential class.

Order at 22.  It then found that Jamison's credibility problems were further heightened by the specific facts of the case.  *Id.*  Therefore, regardless of the Court's purported misapprehension, Jamison is not an adequate class representative because a recently convicted fraudster should not serve as a fiduciary for a class.

However, there was also no misapprehension by the Court.  The Court noted that Jamison's credibility issues were heightened because there was an open question as to whether Jamison or his mother paid the bill for the cellphone that was allegedly called and determining whether Jamison suffered any monetary loss as result of the alleged conduct will be an issue at trial.  The Court found that these issues could further impact Jamison's credibility because the "[t]he jury could reasonably conclude that Jamison is a convicted fraudster who is seeking a windfall in litigation despite the fact that he never suffered any monetary loss."  Order at 23.  In his motion, Jamison contends that these issues are irrelevant and would not undermine his credibility with the jury.  However, this misses the point.  The recent fraud conviction is admissible and would severely undermine Jamison's credibility with the jury.  *See, e.g., Schleicher*, 2009 WL 1561438, at *3.  Moreover, while the Court does not need to rule definitively here, these factual disputes are relevant because Jamison will need to establish that

he was the subscriber of the wireless number that FCS called in order to establish a valid claim under the TCPA.

The relevant portion of the TCPA provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States – (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. 227(b)(1). It is axiomatic that the person or entity who has a TCPA claim is the "called party."[4] Thus, to begin with Jamison will need to establish that he was called. The fact that the cellphone may belong to his mother and not him is relevant to this threshold question. His felony fraud conviction cuts against him here alone.

However, assuming FCS called a cellphone Jamison possessed, there is still a legal question of who is the "called party?" Is it the owner of the cellphone in question who is charged for the call? Or is it simply the recipient of the call? Generally, with respect to the cellphone, the question is redundant because people do not answer other people's wireless phones. *See Soppet v. Enhanced Recovery, Co., LLC*, 679 F.3d 637, 640 (7th Cir. 2012) ("For cell service, the subscriber and the person who answers almost always are the same, given the norm that one

---

[4] The Court notes that other district courts have found that a plaintiff does not need to be the "called party" in order to assert a "cellular" claim under the TCPA. *See, e.g., D.G. v. William W. Siegel & Associates,* 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011); *Nelson v. Santander Consumer USA, Inc.,* No. 11 C 307, 2013 WL 1141009, at *5-6 (W.D. Wis. Mar. 8, 2013). However, these holdings appear to be the result of a semantic distinction with this Court. Those courts did not hold that anyone could assert a claim for a violation of the TCPA; rather, they held that the plaintiff did not need to be the "called party" as defined by the defendants in those cases. In both cases, the plaintiffs were the actual recipients of the calls. This Court, however, disagrees with *Nelson* that *Soppet's* definition of "called party" is limited to who can give express consent and should not be used for determining who possesses a claim under the TCPA. *Soppet* analyzed the use of the term throughout the statute and specifically invoked the Supreme Court's presumption that a statute uses a single phrase consistently in arriving at its result that a "called party" is a subscriber. Therefore, as described below, this Court believes that the wireless number's subscriber is one who possesses a claim under the TCPA.

person does not answer another's cell phone."). However, a number of district courts, including courts within this district, have concluded that the "called party" is not necessarily the party who is charged for the call but is instead the recipient of the call. *See, e.g., Strickler v. Bijora, Inc.,* No. 11 C 3468, 2012 WL 5386089, at *3 (N.D. Ill. Oct. 30, 2012); *Lozano v. Twentieth Century Fox Film Corp.,* 702 F.Supp.2d 999, 1009-10 (N.D. Ill. 2010); *Abbas v. Selling Source, LLC*, No. 09 C 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009); *See Manno v. Healthcare Revenue Recovery Group, LLC,* No. 11 C 61357, 2013 WL 1283881, at *4-5 (S.D. Fla. Mar. 26, 2013). The underlying rationale for this conclusion is that the purpose of the TCPA was not only to prevent unwanted expenses but also to prevent an invasion of privacy.

However, this Court believes that the Seventh Circuit would limit the right of action to the wireless number's "subscriber" because, while not dealing with this question explicitly, the Court defined the term "called party" to mean "the person subscribing to the called number at the time the call is made." *See Soppet*, 679 F.3d at 643.[5] It is unlikely that it would use a different definition for the same term in the same part of the statute. *See id.* at 639-40 (citing *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980)) ("The presumption [is] that a statute uses a single phrase consistently…"). Therefore, in order to recover, Jamison will need to prove that he was the current subscriber of the wireless number that was called.

While *Soppet* did not explicitly adopt a definition for subscriber, its language suggests that the subscriber is the person who pays the bill. First, the Court defined "called party" in 227(b)(1)(A)(iii) to "mean Cell Number's current subscriber, because only the current subscriber

---

[5] The courts in this district that have concluded any recipient has a cause of action under the TCPA appear to have been decided before *Soppet* or did not consider the import of *Soppet*. However, the recent case from the Southern District of Florida relied on by Jamison, *Manno v. Healthcare*, supports this Court's analysis. There, the Court was asked to consider whether the "called party," i.e., the claim holder, was the "subscriber" or "regular user and carrier of the phone." *See Manno*, 2013 WL 1283881, at *4-5. It concluded the latter but noted the distinction between the terms.

pays." *Id.* at 639.  Subsequently it noted that the current subscriber "is the person who pays the bills or needs the line in order to receive other calls."  Therefore, under *Soppet*, Jamison's monetary loss, or lack thereof, is relevant because it goes to show whether or not he is the subscriber of the wireless number called by FCS.  Even if *Soppet* separately defined a person who "needs the line in order to receive other calls" as a distinct category of subscriber from the payor, Jamison's lack of monetary loss is still relevant and admissible to prove that Jamison's mother and not Jamison was the subscriber of wireless phone in issue.  Thus, while the recent felony fraud conviction is sufficient by itself to render Jamison inadequate as class representative, the fraud conviction combined with the relevant lack of loss could be especially damaging.

## II.     Jamison Identifies No Valid Basis for this Court to Reconsider Its Decision that Individualized Issues of Consent Predominate

Jamison does not even attempt to manufacture a purported error of apprehension with respect to the Court's decision to find that individualized issues predominate in this case; rather, he simply the asserts the Court decided incorrectly.  This is an improper basis for a motion for reconsideration and may be rejected summarily.  *See Caisse Nationale de Credit Agricole,* 90 F.3d at 1270 (holding that motions for reconsideration do not provide an opportunity to litigate previously rejected arguments).  If Jamison believes the Court erred in finding that individual issues of consent predominate, his recourse should be to appeal the Court's decision to the Seventh Circuit pursuant to Federal Rule of Civil 23(f).  It should not be to file serial motions with this Court.

Moreover, Jamison again fails to show that issues of consent will not predominate.  Federal Rule of Civil Procedure 23(b)(3) requires a plaintiff to demonstrate that "questions of

law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Rule 23(b)(3) "'inquiry trains on the legal or factual questions that qualify each class member's case as a genuine case or controversy,' with the purpose being to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Messner v. Northshore Univ. Healthsystem,* 669 F.3d 802, 814 (7th Cir. 2012) (quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997)). Predominance is similar to Rule 23(a)'s typicality and commonality requirements; however, it is "far more demanding." *Amchem Products,* 521 U.S. at 623-24. While "[i]ndividual questions need not be absent," they may "not predominate over the common questions affecting the class as a whole." *Messner,* 669 F.3d at 815.

It is indisputable that courts have reached different opinions in TCPA cases regarding whether issues of individualized consent predominate so as to prevent class certification. *Compare, e.g., Gene & Gene L.L.C. v. BioPay, L.L.C.,* 541 F.3d 318, 326-29 (5th Cir. 2008) (holding that district court abused its discretion in certifying class because the individualized issue of whether "fax advertisements were transmitted without the prior express invitation or permission of each recipient" prevented plaintiff from "advanc[ing] any viable theory employing generalized proof concerning the lack of consent with respect to the class . . . [which] leads to the conclusion that myriad mini-trials cannot be avoided."); *G.M. Sign, Inc. v. Brink's Mfg. Co.,* No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011) (holding that individualized issues of consent predominated over common issues because defendant set forth specific evidence showing large percentage of putative class consented to receive faxes), *with Meyer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036, 1042 (9th Cir. 2012) (finding the individualized issue

of consent did not predominate because the defendant "did not show a single instance where express consent was given before the call was placed."); *G.M. Sign, Inc. v. Finish Thompson, Inc.,* No. 07 C 5953, 2009 WL 2581324, at *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.) (The defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists have perchance consented to receiving the fax.").

Such disparate results make sense because "there are no invariable rules regarding the suitability of a particular case filed under this subsection of the TCPA for class treatment; the unique facts of each case generally will determine whether certification is proper." *Gene & Gene,* 541 F.3d at 328. However, this Court determined that the lesson that could be extracted from these cases is that issues of individualized consent predominate when a defendant sets forth specific evidence showing a significant percentage of the putative class consented to receiving calls on their wireless phone. *See* Order at 25-26. The Court found in its prior opinion that the determinative question is whether Jamison can employ generalized proof to show that the issue of consent will not exist as to a significant number of class members and concluded that he could not. *See id.* at 27-28.

The parties determined that there were 2,887 wireless phone numbers that were called by FCS on behalf of Honda that FCS had obtained by employing "skip-trace" methods. However, Honda offered evidence that customers provide Honda with their wireless phone numbers in at least four ways: (1) when the customer signs an installment sales contract; (2) when the customer fills out a credit application; (3) when the customer provides Honda with insurance information; and (4) when the customer speaks with a Honda customer service representative on the phone. *See* Doc. 74-2, Declaration of Melissa Metcalf at ¶ 3. Honda also established that when a Honda customer service representative speaks to a Honda customer, they obtain the customer's

10

preferred number to be contacted at. This number is generally entered into the phone field in Honda's Customer Account Servicing System ("CASS") or into CASS's "notes" field. *Id.* at ¶ 7. Honda further established that due to system limitations these numbers are not given to FCS when Honda employs FCS to collect debts allegedly owed to Honda. *Id.* at ¶ 10. Finally, Honda established that over 1,200 of the 2,887 wireless phone numbers that are potentially at issue in this case are located in the phone field in CASS. *Id.* at ¶ 11. This evidence has not been rebutted by Jamison.[6]

As a result, the issue of consent exists with respect to at least 1,200 class members but likely exists with respect to many more who furnished Honda with their cellphone numbers on sales contracts, credit applications, insurance information sheets or in speaking with customer service representatives who entered the information in CASS's notes field. Therefore, since the unrebutted evidence showed that Honda collected the wireless phone numbers of a large number of the persons called by FCS, individual inquiries would be needed to determine whether these persons consented to be called on their wireless phone number. In other words, the Court would be required to conduct a series of mini-trials to determine the population of the class and to determine liability. Since there was no class-wide basis for determining which persons gave consent to be called on their wireless numbers and which did not, individual issues predominated over class-wide issues.

---

[6] In his motion for consideration, Jamison takes issue with the weight the Court accorded the Metcalf deposition. However, Jamison presented no reason for the Court to question the competency of this evidence. If Jamison thought it was improper, he could have moved to strike it. He did not. If he thought it was incompetent, he could have offered evidence to rebut it. He did not. However, now he attempts to offer an expert affidavit to rebut Metcalf's testimony. This is clearly improper and the affidavit is stricken. *See Mannoia v. Farrow,* 476 F. 3d 453, 456-57 (7th Cir. 2007) (affirming district court's decision to strike expert report as untimely where the report was filed in opposition to a motion for summary judgment but was not disclosed before the court's discovery deadline passed). However, the affidavit is also irrelevant. The Court's ruling that issue of consent predominated turned on the fact that the Defendants established that consent would be an issue for a large percentage of the class members so that the Court would be required to conduct mini-trials to determine whether the Defendants were actually liable to each of those class members. The ease of identifying wireless numbers in Honda's CASS system is not relevant to the resolution of this issue.

Jamison's motion appears to argue that: (1) this Court should certify Jamison's class because district courts, including this Court, have certified classes that use a similar definition as Jamison does; (2) the Court inappropriately required Jamison to prove the merits of his case at the class certification stage by importing a consent requirement into the class definition; and (3) the class definition may be revised so that consent is no longer an issue. As stated above, these arguments do not even purport to raise a valid basis for reconsideration and are incorrect.

First, while other district courts, including this Court (as it explicitly noted in its original opinion), have certified classes that have similar definitions to the class here, such similarities are irrelevant for purposes of the predominance analysis because a determination of whether a class is certifiable for an alleged violation of the TCPA turns on the unique facts of each case. *See Gene & Gene,* 541 F.3d at 328. As this Court stated in its prior opinion, in those cases where the issue of consent is speculative, it does not predominate. However, in cases where there is specific evidence of consent with respect to significant number of potential class members, that issue will predominate. *See* Order at 25-26. Since that is the case here, individualized issues predominate over general ones.

Second, the Court has not required Jamison to prove the merits of his case at the class certification stage. Nowhere in the Court's prior opinion did it state that Jamison must prove that Honda and FCS are liable to each potential class member in order for the Court to certify the class. Nowhere did it state that the burden was on Jamison to prove lack of consent. Consent is an affirmative defense and the burden would be on Honda and FCS at trial to prove consent at trial. *See In the Matter of Rules of Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, 23 F.C.C.R. 559, 565 (Dec. 28, 2007) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided

prior express consent."); *but see Meyer,* 707 F.3d at 1043 (defining the elements of a TCPA claim to include the lack of "the recipient's prior express consent"). Regardless, issues of liability and issues of predominance are not the same. Individualized issues necessary to decide an affirmative defense may predominate so as to prevent class certification. *See Gene & Gene*, 541 F.3d at 327; *In re Monumental Life Ins. Co.,* 365 F.3d 408, 420 (5th Cir. 2004) (internal citations omitted) ("predominance of individual issues necessary to decide an affirmative defense may preclude class certification"). For purposes of class certification, it is Jamison's burden to prove that they do not. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2012) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule - - that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties common questions of law or fact, etc.") (emphasis in the original). It is then the Court's duty to rigorously analyze whether Jamison has met this burden. *See id.*

Since Honda produced evidence that a substantial number of the potential class members consented to receiving calls on their wireless phone numbers, class certification would only be proper if Jamison articulated a method of employing generalized proof by which a court or jury could determine whether potential class members gave their consent. *See Gene & Gene*, 541 F.3d at 329 (The plaintiff "has failed to advance a viable theory of generalized proof to identify those persons, if any, to whom [defendant] may be liable under the TCPA . . . . [t]his prevents the purported class from having the required cohesiveness and defeats the predominance requirement."). Jamison failed to do this.

Indeed, when he was confronted with this requirement on the initial briefing of the motion for class certification, Jamison effectively conceded that the individualized issue of consent would predominate with respect to the class defined in the complaint because instead of

any attempting to articulate any method of employing generalized proof, Jamison attempted to amend the class definition *instanter* to exclude individuals who may have given their consent.[7] *See* Doc. 90 at 19-20 ("the parties have already identified the individuals who could have possibly consented to the telephone calls at issue . . . . [t]hese individuals can simply be excluded from the class by narrowing the definition as follows...").

This segues into Jamison's third complaint with the Court's prior opinion. Namely, that the amended class definition first proposed in Jamison's reply brief in support of his motion for class certification removes the issue of consent because only those individuals who never provided their wireless phone number to Honda would be potential class members. However, this argument misses the entire point because it merely replaces one predominance problem with another. Instead of conducting mini-trials to determine whether potential class members provided consent to Honda to be called on their wireless phone numbers, the Court would now be required to determine if each class member's wireless number appeared in Honda's records. Jamison has failed to articulate a method of employing generalized proof for determining whether various class members' wireless telephone numbers appeared in Honda's records. Therefore, Jamison has failed to meet his burden under Rule 23(b)(3) because individual issues predominate over common ones.[8]

---

[7] The Court noted in its prior opinion that there is a split of opinion as to whether a putative class plaintiff may amend their proposed class definition in the motion for certification without seeking to amend the complaint. *See* Order at 19. However, the Court does not need to address the propriety of Jamison's action because both proposed class definitions fail. However, it should be noted, the Court is not aware of any authority that has permitted a class plaintiff to amend their class definition through the use of a reply brief.

[8] Jamison also argues that the Court erred because a recent opinion issued by a United States District Court from the Southern District of Florida found the issue of consent did not preclude a finding of commonality. *See Manno,* 2013 WL 1283881, at *8. However, an opinion from the Southern District of Florida does not bind this Court. The opinion was also issued before the Court issued its prior opinion. It, therefore, cannot constitute a change in the controlling law that would warrant reconsideration by this Court of its prior opinion.

### III. Jamison Identifies No Valid Basis for this Court to Reconsider Its Decision that the Proposed Class is Not Ascertainable

Jamison also complains that the Court's holding that the proposed class was not ascertainable was based on additional purported misapprehensions of law and fact. While not an explicit requirement of Rule 23, a class definition "must be definite enough that the class can be entertained." *Oshana v. Coca Cola*, 472 F.3d 506, 513 (7th Cir. 2006). This means that the "class must be identifiable as a class and membership within it must be determined by application of precise, objective criteria." *Bridgeview Health Ctr., Ltd. v. Clark,* No. 09 C 5601, 2011 WL 4628744, at *2 (N.D. Ill. Sept. 30, 2011); *see also, e.g., Pawelczak v. Financial Recovery Services,* 286 F.R.D. 381, 385 (N.D. Ill. 2012).

In its original opinion, the Court held that the class defined in Jamison's complaint was not sufficiently definite to warrant certification. The Court found that because Jamison's proposed class could potentially include thousands of individuals who consented to receiving calls on their cellphones and thus have no grievance under the TCPA, the class was overbroad under the Seventh Circuit's holding in *Oshana*. *See* Order at 29 (internal citations omitted); *see also Oshana*, 472 F.3d at 513-14 (affirming denial of class certification on ascertainability grounds as proposed class was overbroad because it contained millions of potential members who were not actually deceived into purchasing Diet Coke and thus did not have an ICFA claim); *see also, e.g., Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229 (S.D. Ill. 2011) (denying certification of TCPA claims on ascertainability grounds and noting that "[w]here a class is overbroad and could include a substantial number of people who have no claim under the theory advanced by the named plaintiff, the class is not sufficiently definite."); *Pesce v. First Credit Services*, No. 11 C 1379 (N.D. Ill.) at Doc. 126 (decertifying class as too broad in case that preceded the instant case because potential class members included people

where "the original creditors' records show that the person provided the cell phone number to the creditor but the defendant's records do not.").

Jamison does not identify any misapprehension of fact with respect to the decision to find the class definition proposed in the Complaint overbroad, he simply asserts that the Court was incorrect. Such an argument may be summarily rejected. *See Caisse Nationale de Credit Agricole,* 90 F.3d at 1270. Jamison's argument is also without merit. First, Jamison attempts to draw a distinction between class definitions that include a large number of potential members who potentially cannot satisfy an element of the claim versus a class definition that includes a large number of potential members who are not liable due to the same affirmative defense. However, *Oshana* makes no such distinction. Rather, it held that a class is overbroad where it contains a large number of potential members who have "no grievance" with the defendant. *Oshana*, 472 F.3d at 514. Since this is the case here, Jamison's class definition is overbroad.

Second, despite Jamison's arguments to the contrary, this Court's decision in *GM Sign v. Finish Thompson* also does not dictate a different result. In that case, which involved allegations that fax blasts violated the TCPA, this Court found that the issue of consent did not predominate and did not render a class definition overbroad. However, Jamison repeatedly overlooks the critical distinction between that case and the instant case. There, this Court specifically found that at the time of class certification "there [was] no evidence in the record that any recipient of the fax consented" to receiving the fax. *G.M. Sign, Inc.,* 2009 WL 2581324, at *8. Conversely here, there was evidence in the record at the time certification was decided that a large percentage of the potential class did consent to receiving calls on their wireless numbers. Therefore, the proposed class was not ascertainable.

Jamison also complains that the class definition he proposed for the first time in his reply fixes any ascertainability problems. However, because the Court misapprehended the facts, according to Jamison, it found ascertainability problems remain because there would be no way to identify the "called party" for purposes of establishing liability. In its original opinion, the Court found that newly proposed class would not fix the ascertainability problems because there may still be no way to identify the subscribers of the cellphone at the time those cellphones were called. In reaching this conclusion, the Court cited the facts of the *Soppet* case as well as Jamison's own peculiar circumstances.[9] *See* Order at 31. Namely, that debt collectors do not always call who they intend to call and as a result, there is no way to determine who were the subscribers of the wireless numbers who are potentially class members at the time the allegedly offending calls were made. *See id.*

Jamison contends that the Court misapprehended the facts because the Court stated that FCS intended to call Jamison's sister, not Jamison; however, in actuality, FCS intended to call Jamison to collect his sister's debt. He also argues that the Accurint records will show the subscriber of the cell phones called at the time those calls were placed. Jamison's support for this argument is as follows: (1) Exhibit 4 to his reply brief in support of his motion for certification contains a screen shot of the Accurint skip-trace ran on Jamison's sister Kai; (2) the screen shot also contained Jamison's name and address and an associated telephone number; (3) a separate exhibit showed a log of the calls made by FCS in pursuit of Kai's debt; (4) this log contains Jamison's wireless number. As a result, it is clear, according to Jamison, that FCS intended to call Jamison and not his sister.

---

[9] *Soppet* involved a suit brought by two cellphone subscribers who were called repeatedly by debt collectors seeking to collect a debt from the previous subscriber of those cell phone numbers. *See Soppet,* 679 F.3d at 638-39.

However, this ignores some key facts.  First, Jamison's wireless number does not appear in the screenshot attached as Exhibit 4.  Second, the number listed as Jamison's in Exhibit 4 does not appear in the call log exhibit.  Thus, it appears that FCS never called that number in pursuit of Kai's debt.  Third, a number that belongs to Kai appears in the screenshot without a name or address listed next to it.  Jamison claims that his wireless number would have been included in the screen shot but it was deleted.  However, he did not present evidence showing that if the wireless number had been included in the screen shot, it would have been associated with Jamison and not his sister.  The Court fails to see how it made a mistake of apprehension based on this record.

It was presented with evidence that FCS mistakenly called Jamison's cellphone number. The skip-trace of Jamison's sister presented to this Court did not show the wireless number at issue.  The call log presented to the Court did not contain the number associated with Jamison. Even accepting Jamison's statement that his wireless number was deleted from the screenshot (which was never supported until the reply in support of the motion for reconsideration), there is no evidence that FCS intended to call Jamison because there is no evidence that his wireless number was associated with Jamison and not Kai in the screenshot. Indeed, the reasonable inference is the opposite.  The FCS log shows that it called the number associated with Kai in the screenshot but not the number associated with Jamison.  See Doc. 91 at Exhibits 4 & 5 to Motion for Class Certification  (XXX-XXX-0270 is associated with Kai in the screenshot in Exhibit 4 and appears on the call log in Exhibit 5; XXX-XXX-5732 is associated with Jamison in the screenshot in Exhibit 4 but does not appear on the call log in Exhibit 5).  If it did not call one number specifically associated with Jamison, why would FCS call the other unless that number was not specifically associated with Jamison?  Moreover, since he did not produce a single

Accurint record of another putative class member, the Court gives no weight to Jamison's conclusory assertions that FCS's records will render the newly proposed class ascertainable. It is Jamison's burden to establish that the proposed class is ascertainable and he has failed to meet this burden. Regardless, Jamison has not identified any error on the Court's part that would warrant reconsideration of the Court's prior order.

## CONCLUSION

For the reasons set forth above Jamison's motion for reconsideration of this Court's March 28, 2013 Order denying the motion for class certification is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 29, 2013